1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PRESIDIO GROUP, LLC, a Washington
limited liability company; et al,

          Plaintiffs,

        v.

GMAC MORTGAGE, LLC, a Pennsylvania
limited liability company; et al,

          Defendants.

Case No. C08-5298RBL

ORDER GRANTING GMACM'S
MOTION TO DISMISS

THIS MATTER comes before the Court upon Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) brought by defendants, GMAC Mortgage, LLC and General Motors Acceptance Corporation ("GMACM") [Dkt. #49]. The Court has reviewed the materials submitted in support and opposition to the motion. Oral argument is not necessary for the Court to resolve the issues presented by the motion. For the following reasons the Court **GRANTS** the Motion to Dismiss.

## STATEMENT OF FACTS

In their Second Amended Complaint [Dkt. #29], plaintiffs allege that Defendant, Richard Cano, perpetrated a fraudulent scheme against them resulting in the loss of $82,000. They assert claims against Cano and his employers, GMAC Mortgage LLC and General Motors Acceptance Corp., based on Federal and State racketeering statutes, 18 U.S.C. §1961 and RCW 9A.82.080(1)(a), (2)(a), and (3)(a), the State Consumer Protection Act, RCW 19.86.010 and various common law theories. In their 195-page Second Amended Complaint plaintiffs allege Cano was employed at GMACM as senior loan officer in GMACM's

Vancouver office.  Complaint ¶¶51, 65, 267-268.  The acts complained of occurred during late November 2005, through December 2005, during which time Cano was employed at GMACM.  ¶¶8, 51.  While employed at GMACM, plaintiffs allege Cano requested plaintiffs "wire monetary funds for Cano's benefit in order for Cano to satisfy the $387,000.00 monetary funds transfer tax and associated charges . . . in order for Cano to obtain immediate release of and access to Cano's monetary funds held in escrow. . . ." ¶8.

Cano directed the plaintiffs to wire the funds to Darmstad Clearing & Contracting, Ltd. ("Darmstad").  ¶9.  Based on Cano's representations plaintiffs believed that "Cano owned, managed, controlled, operated, directed, managed, and/or governed the business affairs and/or activities of Darmstad."  ¶¶12, 20.  Based on "Cano's verbal and written instructions, directions, and/or commands and justifications" plaintiffs wired a total of $82,000.00 to Darmstad in December 2005.  ¶14.  Payment was made "for the express purpose of facilitating and furthering the ability of Cano to satisfy the $387,000 obligation Cano owed to Lloyds TSB Bank."  ¶14.

Plaintiffs allege that "Cano, by and through Darmstad received plaintiffs' $82,000."  ¶21.  Cano's objective in wiring the money to Darmstad was to "convert the nature of those feloniously acquired monetary funds into legitimate funds, and to insulate and immunize those monetary funds . . . ."  ¶22.  According to plaintiffs, Darmstad is a "Nigerian 429 scam" and Cano's "alter ego."  ¶¶59, 60.   Plaintiffs further allege that "Cano, directly and/or indirectly, received monetary benefits from Darmstad in order to pursue business activities and maintain Cano's ability to live and work."  ¶58.

According to plaintiffs, GMACM's only involvement in the transaction relates to an email Cano sent to plaintiffs attaching copies of "The Cooperative Bank instrument entitled 'BANK GUARANTEE', dated 28 November 2005."  ¶14.  The guarantee purported to confirm "the existence of an escrow account holding £10,000,000 British Pounds Sterling, to remain in escrow for the benefit of Cano."  ¶15.  Plaintiffs do not allege any facts explaining how the email implicates GMACM.  The guarantee was not signed by GMACM.  ¶15.  There are no other facts alleged regarding the November 28th email.

Plaintiffs allege that based on Cano's representations they believed that £10,000,000, once released, "would fund plaintiffs [sic] various real estate development projects, one in particular, the Deffenbaugh Project situated in Clark County, Washington, and provide monetary funds to plaintiffs so plaintiffs could

acquire a personal residential property." ¶¶268-269. Plaintiffs allege they had applied for but did not qualify for a mortgage loan through GMACM. ¶34. The loan application does not appear to form the basis of any of the plaintiffs' claims.

After receiving the guarantee, "Cano reassured and reconfirmed to plaintiffs the legitimacy and safety of [sic] nature of the matter represented by Cano." ¶17. On May 19, 2006, after the funds had been wired by plaintiffs, Plaintiffs Ramona Kauhi came to the GMACM office where Cano was employed to confront Cano regarding "the status of funds in the escrow account in London, United Kingdom." ¶31. Only Ramona Kauhi and Cano participated in the May 19th meeting. ¶¶31-38. According to plaintiffs, Cano held two meetings at GMACM with Marilyn and Jerry Chau regarding false documents prepared by Cano while Cano worked for his prior employer, Countrywide. ¶61. Neither the Chaus nor Countrywide are parties to this lawsuit. Plaintiffs contend that Cano left his previous employment at Countrywide "for having engaged in felonious and fraudulent conduct." ¶266. Plaintiffs allege that after December 31, 2006, and after "discovering the felonious and wrongful conduct of Richard Cano" at GMACM, GMACM permanently closed its Vancouver office. ¶65.

In their motion to dismiss, defendants argue that plaintiffs' Second Amended Complaint fails to allege facts sufficient to support any cause of action against Cano's unsuspecting employers. Unfortunately, plaintiffs' response merely consists of a recitation of randomly selected cases that enunciate basic legal principles regarding fraud generally and RICO specifically. Plaintiffs fail to address or even mention the basic premise of defendants' motion: that as employers who did not participate in or benefit from their employees' fraud, they are not liable for the plaintiffs' damages. A review of plaintiffs' Second Amended Complaint reveals that they have failed to assert facts that support any theory of liability against moving defendants.

## **DISCUSSION**

### A.  **FRCP 12(b)(6) Motion to Dismiss.**

A motion to dismiss for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6) should be granted only if, accepting all of the allegations of material fact as true, and construed in the light most favorable to the nonmoving party, the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996). The

plaintiff, however, must plead factual allegations with specificity; vague and conclusory allegations of fact fail to state a claim for relief. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3rd Cir. 1988).

Under *Bell Atlantic Corp. v. Twombly*, a litigant cannot simply recite the elements of a cause of action to avoid dismissal under this Rule. He must instead "provide the grounds of his entitlement to relief, which requires more than labels and conclusions." 127 S. Ct. 1955, 1964-65 (2007). The litigant must plead a claim that moves "across the line from conceivable to plausible." *Id*. at 1974. Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Review is limited to the content of the complaint [and properly incorporated documents], and all allegations of material fact must be taken as true, and construed in the light most favorable to the non-moving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

While it may not be the trial court's task to scour the record in search of a genuine issue of triable fact in a summary judgment context, it does fall upon the trial judge to scour a 195-page complaint in search of specific factual allegations which might support the relief sought by the plaintiffs. The Court has accepted that responsibility and diligently reviewed all 195 pages in search of facts that do more than create a mere suspicion of a legally cognizable right of action against GMACM. No specific factual averments supporting relief against GMACM have been found within the four corners of the complaint.

Reduced to its simplest and most succinct terms, plaintiffs' second amended complaint alleges that after failing to qualify for a mortgage with GMACM, plaintiffs were fed a line by Richard Cano, GMACM's senior loan officer, that he had £10,000,000 in an escrow account at Lloyds TSB Bank in England. He told them that in order to access those funds, he had to pay a funds transfer tax of $387,000. If plaintiffs helped him access these funds, he (Cano) would help finance some of plaintiffs' various business enterprises, and personal acquisitions. Believing Cano's story, plaintiffs wired $82,000 to an off-shore account they believed to be controlled by Cano.

GMACM brings its motion to dismiss arguing that nowhere in plaintiffs' 195-page complaint is there any fact alleged by plaintiffs that would support a conclusion that GMACM knew of the scheme, participated in the scheme or benefitted from the scheme. Absent the pleading of such facts, the RICO claims and state law claims cannot be sustained.

**B.      RICO Liability.**

A violation of 18 U.S.C. §1962(c) requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.I, v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). In the Ninth Circuit, the doctrine of *respondeat superior* is applicable under RICO where an employer benefitted from its employee's RICO violation. *Brady v. Dairy Fresh Prods. Co.,* 974 F.2d 1149, 1154-55. Neither the Second Amended Complaint nor the memorandum in opposition to the motion to dismiss allege that moving defendants benefitted in any way from Cano's allegedly fraudulent activity. Nor do they assert that moving defendants participated in Cano's enterprise or scheme. Indeed, there is no evidence of any involvement on the part of moving parties to support or advance Cano's scheme except that Cano sent one e-mail to plaintiffs from his work-site and plaintiff, Ramona Kauhi, came to Cano's office once to complain about the poor performance of their "investment" with Cano. These activities are insufficient as a matter of law to impose liability on moving defendants under the theories alleged in the Second Amended Complaint.

**C.      Fraud.**

The elements of a fraud claim are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speakers that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. *Stiley v. Block*, 130 Wn.2d 486, 505 (1996).

In the case at bar plaintiffs fail to identify any statement made by GMACM as part of the Cano scheme. They also fail to identify any facts which would support a plausible argument that when he hatched this scheme against the plaintiffs, Cano was acting within the scope of his employment with GMACM. To the contrary, all allegations related to the scheme acknowledge that the scheme involved Cano's private business opportunities and activities.

**D.      Conversion.**

Conversion requires an "act of wilfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *Pub. Util. Dist. No. 1 of Lewis County v. Washington Pub. Power Supply Sys.,* 104 Wn.2d 353, 378 (1985). Plaintiffs fail to allege facts

that would support an argument that GMACM did anything to rest control of plaintiffs' money from them. Certainly, there is no allegation that GMACM ever received any of the plaintiffs' funds. Instead, the complaint clearly alleges that Cano alone persuaded plaintiffs to give him the money so that he could access his personal funds held in escrow in his name. GMACM did not convert plaintiffs' property.

**E.      Negligent Supervision.**

A negligent supervision claim requires that (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to others; (3) the employer knew, or should have known in the exercise of reasonable care that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries. *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48-49, 51 (1997). Plaintiffs are required to submit specific facts, as opposed to general conclusions, showing that an employer knew or should have know that its employee presented a danger to others. *Thompson v. Everett Clinic,* 71 Wn. App. 548, 555 (1993).

Plaintiffs support their general conclusion that GMACM knew or should have known of Cano's proclivities by alleging that Cano lost his prior job at Countrywide for fraudulent conduct. Neither in their complaint nor their memorandum in opposition do plaintiffs allege what the fraudulent conduct was, that GMACM knew about it or what GMACM should have done, but did not do, to learn about it. What plaintiffs do allege is that as soon as GMACM learned of Cano's scheme, they fired him and closed their Vancouver office.

Rule 8(a) "contemplates the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleading's "bare averment that he wants relief and is entitled to it." 5 Wright & Miller, Federal Practice & Procedure, §1202, pp. 94-95 (3d ed. 2004). Plaintiffs have failed to assert facts that would support an argument that GMACM is liable for negligent supervision of their employee.

**F.      Breach of Fiduciary Duty,**

To establish a breach of fiduciary duty, a plaintiff must prove (1) the existence of a duty owed; (2) breach of that duty; (3) resulting injury; and (4) that the claimed breach proximately caused the injury. *Miller v. United States Bank, N.A.,* 72 Wn. App. 416, 426 (1994). Here, the plaintiffs do not assert specific facts that even suggest that GMACM knew of the phoney dealings between Cano and plaintiffs.

The facts that are alleged demonstrate that plaintiffs believe they were dealing with Richard Cano and with funds and business opportunities belonging to Richard Cano. Absent some basic understanding that a relationship even exists between plaintiffs and GMACM's employee, no duty on the part of GMACM arises.

**G.      Negligent Misrepresentation.**

As stated earlier in the section on fraud, because there was no representation of existing fact allegedly made by GMACM, there can be no action for negligent misrepresentation.

**H.      Consumer Protection Act.**

A Consumer Protection Act violation under RCW 19.86.010 *et. seq.* requires (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) that impacts the public interest; (4) which causes injury to the party in his business or property; and (5) which injury is causally linked to the unfair or deceptive act. *Industrial Indem. Co. v. Kallevig*, 114 Wn.2d 907, 920-21 (1990). Without a specific factual allegation that GMACM knew of, participated in or benefitted from Cano's scheme, there can be no CPA violation on the part of GMACM.

<u>**CONCLUSION**</u>

On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The need at the pleading stage for allegations plausibly suggesting a right to relief reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to show that the pleader is entitled to relief. Despite the number of words used in the effort, plaintiffs have failed to allege specific facts to raise a reasonable expectation that discovery would reveal actual evidence that GMACM is liable under any theory for Richard Cano's fraudulent conduct. GMACM's Motion to Dismiss [Dkt. #49] is **GRANTED.**

Dated this 3rd day of December, 2008.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE